By the Court.—Monell, J.
It was error to exclude the evidence offered by the defendants, that at the time of the sale, Ames was the owner of the property in question; and that subsequently, and before the demand, he took posession and removed it from the defendants’ premises and control.
The demand and refusal, upon which alone the plaintiff rested as proof of conversion, was prima facie evidence merely, and could be repelled by.proof that a compliance with the demand was impossible (Kelsey v. Griswold, 6 Barb. S. Ct., *390 436 ; Hill v. Covell, 1 N. Y. [1 Comst.], 522; Whitney v. Slauson, 30 Id., 278 ; Andrews v. Shattuck, 32 Id., 396).
The offer was to show that, at the date of the bill of sale, Ames was the owner of the property; that the plaintiff knew it, and that subsequently, and before the plaintiff’s demand, Ames took possession, and removed the property “ against the wishes and in spite of the remonstrances of. the defendants.” If this evidence had been admitted, it would have repelled the proof of conversion resting in the refusal of the defendants to deliver the property to the plaintiff, they not then having the possession or any control over it.
Of the same character was the evidence subsequently offered by the defendants,—that before the demand, a portion of it had been seized and removed by the sheriff under an attachment against Ames. As is well settled by the cases above cited, such proof would have shown that the defendants could not deliver the property, and hence there was no conversion.
There must be a new trial, with costs to abide the event.
Robertson, J.
There was conflicting evidence as to the absolute delivery of the instrument of the 21st of June, 1861; also as to the waiver of any condition upon which' it was placed in the hands of Bottom. The direction of the learned judge to the jury to find a verdict for the plaintiff was peremptory. Unless the condition upon which the evidence tends to show a conditional' delivery, was one which could not have been imposed, because contrary to the face of the agreement, the charge was erroneous.
The instrument on its face purports to be executed for a certain sum “ cash paid to Harlow Huntington on debts due (i him from the Douglass Maufg. Go.” The defendants testified that the depositary (Bottom) was not to deliver it, until that money was paid, and efforts were made to procure it. There is nothing in the condition contrary to any stipulation in the agreement. If it had been absolutely delivered, it would have been evidence of the payment, and the delendants would have been obliged to disprove it.
If the instrument had been absolutely delivered, it was clearly not an absolute sale of the goods. The defendants by it were only to repay to the plaintiff what is called the cost of the goods, which was money paid to Harlow Huntington *391 for debts of the Douglass Manfg. Co.; all the residue was to go to the payment of other liabilities of Harlow Huntington for H R. Douglass. It probably was an. assignment im, trust, to secure, first, the debt due to the plaintiff, and secondly, other liabilities of Harlow Huntington for a third person, and possibly may have vested the whole title in the plaintiff.
I do not understand that a warranty' of title on a sale of chattels can be so far implied as to estop the vendor from setting up the deprivation of possession by paramount title. Such a warranty is a mere executory covenant, the breach of which entitles the injured party to damages. The law will not tolerate the absurdity of both implying a warranty to enable the party to recover damages, and an estoppel, which presupposes that the warranty has been complied with. If sued for not delivering the property as mere bailees, the defendants of course-can set up paramount title in another, who had a right to take possession. The cases cited by my brother Monell, fully establish this. There was evidence offered to show such taking possession, and it was excluded.
The delivery of the goods to the plaintiff was entirely constructive, and depends upon the delivery of the instrument of June, 1861.
I concur in thinking the judgment should be reversed, and a new trial granted, with costs to .abide the event.
Judgment reversed.